**NATIONAL COUNCIL FOR INDUSTRIAL DEFENSE, INC. and American Engineering Association, Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civ. A. No. 92–1898 RCL.**

United States District Court, District of Columbia.

May 25, 1993.

Donald Dinan, Jerome Zeifman, O'Connor & Hannan, Washington, DC, for plaintiffs.

David Cohen, Velta Melnbrencis, U.S. Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This case comes before the court on defendants' motion to dismiss. The court heard oral argument on defendants' motion on March 26, 1993, and received supplemental briefs on the issues thereafter. The court grants defendants' motion because it concludes that it lacks subject matter jurisdiction over plaintiffs' claims.

## I. *FACTS.*

Plaintiff National Council for Industrial Defense is a non-profit organization that fosters "the strengthening of those endangered American production facilities and work forces which contribute to the industrial capacity of the United States." Complaint ¶ 1. Plaintiff American Engineering Association is a non-profit organization that works to "enhance the status of the American engineering profession and related occupations and to support activities for the employment of Americans in the engineering profession." Complaint ¶ 2.

Plaintiffs bring this action to challenge the constitutionality of the binational panel provisions in the United States–Canada Free–Trade Agreement ("Agreement"). Chapter 19 of the Agreement provides that independent binational panels, rather than the national courts of the importing country, shall review either country's final administrative antidumping and countervailing duty determinations concerning products of the other country. The binational panel provisions of the Agreement provide that once a final antidumping or countervailing duty determination has been made, either party to that determination has 30 days to request the review of that decision by a binational panel. The panel is to apply the standard of review that a court of the importing country otherwise would apply in such a case, and the panel's decision is binding on the parties to the dispute. The Agreement also provides that a panel decision cannot be subject to subsequent judicial review.

Congress implemented these and other provisions of the Free Trade Agreement through the appropriately named United States–Canada Free–Trade Agreement Implementation Act of 1988. Title IV of the Act implemented the binational panel provisions through amendments to 19 U.S.C. § 1516a. Congress also included in Title IV a provision not called for by the Free–Trade Agreement. With surprising foresight, Congress provided for the possibility that a court might hold the binational panel review system unconstitutional. Congress legislated that

> "[i]n such event, the President is authorized on behalf of the United States to accept, as a whole the decision of a binational panel or extraordinary challenge committee remanding the determination to the administering authority or the Com-

mission within the period specified by the panel or committee ... and no court of the United States shall have power or jurisdiction to review such action...." 19 U.S.C. § 1516a(g)(7)(B).

Upon passage of the Act, President Reagan signed Executive Order 12662, which states that should any court so rule, he accepts, as a whole, all decisions of the binational panel. 54 Fed.Reg. 785–86. The Executive Order provides for a contingency that has not and may never take place, *i.e.*, a holding by a court that the provision of the Act implementing the panel provisions are unconstitutional.

Plaintiffs challenge the constitutionality of the federal statute that implements the binational panel provisions, because plaintiffs contend that the binational panels violate various provisions of Articles I–III of the Constitution as well as the Fifth Amendment. Complaint ¶¶ 15–26. Plaintiffs also challenge the constitutionality of Executive Order 12662. Complaint ¶¶ 27–28.

Defendants filed this motion to dismiss to challenge both this court's jurisdiction over plaintiffs' claims as well as plaintiffs' standing. The court concludes that it does not have jurisdiction over plaintiffs' claims and grants defendants' motion to dismiss.

## II. *DISCUSSION.*

■ Defendants challenge this court's jurisdiction based on a provision in the Free–Trade Agreement's implementing legislation. That provision reads:

An action for declaratory judgment or injunctive relief, or both, regarding a determination on the grounds that any provision of, or amendment made by, the United States–Canada Free–Trade Implementation Agreement Act of 1988 implementing the binational panel dispute settlement system under chapter 19 of the Agreement violates the Constitution may be brought in the United States Court of Appeals for the District of Columbia Circuit. Any action brought under this subparagraph shall be heard and determined by a 3–judge court in accordance with section 2284 of Title 28.

19 U.S.C. § 1516a(g)(4)(A). Defendants contend that this provision places exclusive jurisdiction over plaintiffs' claims, all of which are constitutional challenges, with the Court of Appeals for this Circuit. This court agrees.

In passing this legislation, both the House and Senate understood this provision as a grant of exclusive jurisdiction to the D.C. Circuit. The Senate Report on the Act states that "any constitutional challenge to the legislation's provisions implementing the binational panel dispute settlement system ... would be heard by a three-judge panel of the United States Court of Appeals for the District of Columbia Circuit." S.Rep. 509, 100th Cong., 2d Sess. 30 (Sept. 15, 1988), *reprinted in* U.S.C.C.A.N. 2395, 2425. The House Report explains the rationale behind this jurisdictional choice.

The Committee believes it is very important for any constitutional challenge to the [Free–Trade Act ("FTA")] dispute resolution provisions to be resolved quickly. Uncertainty about the FTA must not be permitted to exist any longer than is necessary. Subparagraph (A) of [section 1516a(g)(4)] sets forth a fast track constitutional challenge procedure. While the Committee—and the Administration—believe that the binational panel process is constitutional, the wisest course was to establish a single forum for the adjudication of facial challenges to the constitutionality of the system established by the FTA and its implementing legislation. These facial constitutional challenges will be heard by a three-judge panel of the District of Columbia Circuit.

H.R.Rep. 816, Part 4, 100th Cong., 2d Sess. 22 (1988).

Plaintiffs take two different positions against defendants' jurisdictional argument. Plaintiffs first contend section 1516a(g)(4)(A) does not vest exclusive jurisdiction over constitutional challenges in the Court of Appeals, and that this court retains its jurisdiction under a number of other statutes. Plaintiffs's second argument is that even if section 1516a(g)(4)(A) does grant the Court of Appeals exclusive jurisdiction, plaintiffs should not have to comply with that statute

because of financial hardship and other concerns. The court rejects both positions.[1]

■ Plaintiffs' first argument is that section 1516a(g)(4)(A) is not mandatory. Plaintiffs point out that that provision simply states constitutional challenges "may" be brought in the Court of Appeals for this Circuit. That language is permissive, plaintiffs continue, and allows them to bring this action here if they so choose. Plaintiffs rely on a treatise for their contention that the use of the permissive term "may" carries no mandate, but that treatise goes on to conclude that in "certain instances the word 'may' has the effect of 'must.'" 2A *Sutherland Stat. Constr.* ¶ 57.03 (4th ed. 1984). This court concludes that this is one of those instances.

This court reads the "may" language in section 1516a(g)(4)(A) as permissive only as to the allowability of a constitutional challenge, and not as to the court in which that challenge can be made. Congress has used the permissive "may" elsewhere in this statute to this same effect. Specifically, in 19 U.S.C. § 1516(a)(1), Congress provides that parties who wish to appeal a decision by the International Trade Commission "may [do so] in the United States Court of International Trade...." Plaintiffs do not and could not validly argue that by its use of "may" Congress intended to allow parties to appeal such decisions to other courts as well. Congress historically has limited the number of courts with competence over trade matters.[2] Congress has done so again here.

Based on their assumption that section 1516a(g)(4)(A) is permissive, plaintiffs ground this court's jurisdiction in a number of statutes. In an apparent concession to the substance of section 1516a(g)(4)(A), plaintiffs do not bring this action under that provision, but rather under four other jurisdictional statutes: 5 U.S.C. §§ 701–706, 28 U.S.C. §§ 2201–2, 28 U.S.C. § 1337, and 28 U.S.C. § 1331. Complaint ¶ 4. Because section 1516a(g)(4)(A) is not permissive but mandatory, none of these statutes could justify this court's retention of jurisdiction over this matter. The court nevertheless addresses the inapplicability of each of these statutes independently.

First, plaintiffs claim that this court has jurisdiction pursuant to "the Judicial Review Procedures under 5 U.S.C. §§ 701–706, providing for review of a legal wrong suffered by persons within the zone of protection of the antidumping and countervailing duty laws because of an agency action in the implementation of the (FTA), and otherwise adversely affected or aggrieved by such agency action." Complaint ¶ 4. The referenced provisions are part of the Administrative Procedure Act ("APA"). The APA does not give this court jurisdiction over plaintiffs' claims.

■ The APA does not confer an independent grant of subject matter jurisdiction on a presiding court. *Califano v. Sanders,* 430 U.S. 99, 105, 97 S.Ct. 980, 984, 51 L.Ed.2d 192 (1977). It only waives sovereign immunity once the court already has jurisdiction, which this court concludes it does not have. The APA also specifically withholds its waiver of sovereign immunity in those cases where another statute forbids the relief sought, 5 U.S.C. § 702, which 1516a(g)(4)(A) does through its grant of exclusive jurisdiction to the Court of Appeals. Finally, the APA is inapplicable here because it does not provide a remedy for congressional, 5 U.S.C.

---

1. Plaintiffs also argue that because their constitutional challenges include a challenge of the jurisdictional provision, section 1516a(g)(4)(A), the court must assume that challenge is valid for the purposes of defendants' motion, decide section 1516a is unconstitutional, and find it has jurisdiction as a result. This sort of circular reasoning defies logic and settled rules of judicial procedure. Plaintiffs would have the court avoid the jurisdictional issue and decide the merits so that it can ultimately conclude that it has jurisdiction to do what it already has done. Plaintiffs have the burden of proving that this court has jurisdiction before the merits can be reached.

2. Congress first granted the Customs Court and then the Court of International Trade exclusive jurisdiction over constitutional as well as non-constitutional trade issues. *See, e.g., J.C. Penney Co. v. United States Treasury Dep't,* 439 F.2d 63, 66–68 (2d Cir.1971), *cert. denied,* 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971). In the Trade Agreements Act of 1979, Pub.L. 96–39, Congress granted exclusive jurisdiction to the Court of International Trade over appeals from administrative decisions regarding antidumping and countervailing duties. 19 U.S.C. § 1516a(a)(1).

§ 701(b)(1), or presidential action, *Armstrong v. Bush,* 924 F.2d 282, 288–89 (D.C.Cir.1991).

■ Plaintiff's second basis for jurisdiction fails for similar reasons. The Declaratory Judgment Act, 28 U.S.C. § 2201–2, also does not constitute an independent grant of jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). This statute also does not apply unless the court first possesses jurisdiction pursuant to some other statute, which this court concludes it does not.

■ Plaintiffs' last two bases for jurisdiction are 28 U.S.C. § 1331, which grants district courts original jurisdiction over federal questions, and 28 U.S.C. § 1337, which grants district courts original jurisdiction over any civil action or proceeding arising under any Act of Congress regulating commerce. These general grants of jurisdiction are insufficient here because Congress has otherwise limited this court's jurisdiction over the subject matter of plaintiffs' claims.

Congress specifically has delegated jurisdiction over constitutional challenges to the binational panel scheme to the Court of Appeals for this Circuit, and that specific delegation preempts this court's general jurisdiction over constitutional claims. *See United States v. Fausto,* 484 U.S. 439, 447–50, 108 S.Ct. 668, 673–75, 98 L.Ed.2d 830 (1988) (Civil Service Reform Act's denial of administrative and judicial review for adverse personnel actions to nonpreference eligibles precludes judicial review of those decisions by Claims Court under more general jurisdictional grant); *United States v. Erika, Inc.,* 456 U.S. 201, 208, 102 S.Ct. 1650, 1654, 72 L.Ed.2d 12 (1982) (Medicare statute's failure to provide for judicial review of benefits payable decision precludes Court of Claims from having jurisdiction under its general jurisdictional grant); *Brown v. General Services Administration,* 425 U.S. 820, 834–35, 96 S.Ct. 1961, 1968–69, 48 L.Ed.2d 402 (1976) (precisely drawn, detailed statute, preempts more general remedies). This court cannot find jurisdiction based on those general statutes when Congress has spoken so specifically to the contrary. Any other decision would effectively void Congress' jurisdictional preference.[3]

■ Plaintiffs make a second attempt at avoiding section 1516a(g)(4)(A) contending that that provision should not be applied to them because of financial and other considerations. Specifically, plaintiff alleges that their compliance with section 1516a(g)(4)(A) should not be required because such compliance would be costly and futile. The court addresses each of these concerns in turn.

Plaintiffs' claimed cost considerations are three fold. Plaintiffs contend that if they had to bring their challenge in the Court of Appeals they would have to bankroll an appeal of an administrative ruling to the binational panel first, 19 U.S.C. § 1516a(g)(4)(C), post a security bond, and risk money sanctions if they lost their challenge. Plaintiffs contend that these monetary costs are prohibitive but unavoidable if section 1516a(g)(4)(A) applies. This court disagrees.

Plaintiffs' first cost consideration is not as weighty as plaintiffs may claim. One of plaintiff NCID's own members, Bethlehem Steel, already has participated in panel review and already paid for that portion of the appellate process. In the absence of any evidence to the contrary, this court sees no

---

**3.** Plaintiffs rely on two cases for their position that they have a choice of judicial forums. The first is *Connecticut National Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). That case held that an appellate court had jurisdiction under 28 U.S.C. § 1292 (jurisdiction over certain interlocutory appeals from the district court) to hear an appeal from a district court's affirmance of an interlocutory appeal from the Bankruptcy Court. The Supreme Court so held despite the fact that 28 U.S.C. § 158(d) grants appellate courts jurisdiction over the final orders of the district courts, because section 158(d) is silent as to interlocutory orders did not impliedly limit section 1292. That case is distinguishable from this one, because, as discussed in the text, section 1516a(g)(4)(A) implicitly limits all other general grants of jurisdiction to district courts. No such implication existed in *Connecticut National Bank.*

Plaintiffs' second case is *Barlow v. Collins,* 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), but that case involved standing as opposed to jurisdictional issues.

reason why plaintiffs' large memberships could not then have financed an appeal or do so from scratch in the future. Congress imposed this appellate procedure to ensure the ripeness of claims presented, and Congress undoubtedly knew then of the financial costs involved. This court will not ignore that considered judgment when plaintiffs have made no more than generalized assertions regarding their financial hardship and could have mitigated that hardship before.

■ Plaintiffs' second two cost considerations are equally unavailing. While plaintiffs might have to post a security bond to proceed in the Court of Appeals, plaintiffs would have to do the same here if the court rules against them and they appeal. Fed. R.Civ.P. 65(c).[4] Similarly, while plaintiffs might face financial sanctions from a frivolous action brought pursuant to section 1516a(g)(4)(A), so too could plaintiffs face financial sanctions for bringing a baseless claim in this court. Fed.R.Civ.P. 11. Financial burdens rarely if ever excuse a party from the statutorily required judicial process. *See Ortwein v. Schwab*, 410 U.S. 656, 659–61, 93 S.Ct. 1172, 1174–75, 35 L.Ed.2d 572 (1973); *United States v. Kras*, 409 U.S. 434, 443–50, 93 S.Ct. 631, 636–40, 34 L.Ed.2d 626 (1973). The court concludes that plaintiffs' feared financial burdens are not necessarily burdensome or unique to 1516a(g)(4)(A) and do not excuse them from it.

■ Plaintiffs' last argument is that they should not have to comply with section 1516a(g)(4)(A) because such compliance would be futile. Plaintiffs contend that even if they successfully challenge the statute in the Court of Appeals and then in the Supreme Court, Executive Order 12662 would render all of that work for naught. Because section 1516a(g)(7)(B), which authorized the Executive Order, is effective only if the binational panel provision is attacked in the Court of Appeals pursuant to section 1516a(g)(4)(A), plaintiffs request that this court excuse them from the latter provision so that they can avoid the effects of the former. This court will not engage in the unabashed judicial activism necessary to create such a loophole. If plaintiffs want to avoid the Executive Order they will have to do so the old-fashioned way. They will have to earn it by challenging that provision's constitutionality as well. Congress fashioned the statute as it did for a purpose, and this court will not second guess that purpose when it does not even have jurisdiction over plaintiffs' underlying claims.

### III. *CONCLUSION.*

Plaintiffs bring this action to challenge the constitutionality of the binational panel system of the United States–Canada Free-Trade Agreement. The federal legislation that implemented the panel system specifically provides that any challenges to that system must be brought in the Court of Appeals for the District of Columbia Circuit. Plaintiffs have not done so and have not justified this court's retention of jurisdiction over this dispute. Accordingly, the court concludes that it must grant defendants' motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. A separate Order shall issue this date.

### *ORDER*

This case comes before the court on defendants' motion to dismiss. The court heard oral argument on defendants' motion on March 26, 1993, and received supplemental briefs on the issues afterwards. For the reasons stated in the accompanying Memorandum Opinion, the court GRANTS defendants' motion to dismiss because it concludes that it lacks subject matter jurisdiction over plaintiffs' claims. This case is hereby DISMISSED WITH PREJUDICE.

SO ORDERED.

---

4. This would be the case only if injunctive relief was involved.